UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 21-20257-CR-GAYLES

UNITED STATES OF AMERICA

vs.

CARMELO ETIENNE,

                                              **Defendant.**
_____/

**UNITED STATES' RESPONSE IN OPPOSITION TO DEFENDANT'S
MOTION FOR CONSENT TO ENTER A *NOLO CONTENDERE* PLEA**

The United States of America, by and through its undersigned Assistant United States Attorney, hereby responds in opposition to the defendant Carmelo Etienne's Motion for Consent to Enter a *Nolo Contendere* Plea (DE 66) (the "motion"), and states:

Etienne is competent to stand trial and to plead guilty. Nevertheless, he argues the Court should allow him to plead *nolo contendere* because he wasn't in his right mind when he committed the offenses charged in the Indictment, and he doesn't remember what he did. Therefore, he says, he cannot participate in a standard plea colloquy. (*See* Motion (DE 66) at 1-2, 4.) As explained below, the Court should deny Etienne's motion, because he is competent to plead guilty and can answers the questions the Court would ask during a plea colloquy. Moreover, Etienne must participate in the very same colloquy whether he pleads guilty or *nolo contendere*. *See* FED. R. CRIM. P. 11(b)(1), (2). And, allowing Etienne to plead *nolo contendere* would reward his dishonest and vexatious tactics in this litigation.

**STATEMENT OF FACTS**

**Etienne is Competent to Stand Trial and Plead Guilty**

On March 21, 2022, Forensic Psychologist Dr. Carmen Rodriguez issued her report regarding her evaluation of Etienne. Dr. Rodriguez opines that Etienne is competent to stand trial. (*See* Forensic

Evaluation at pp. 11-12 (Opinion on the Issue of Competency).) At a status conference on August 3, 2022, the parties stipulated that Etienne is competent. Accordingly, the Court set this case for trial beginning on December 5, 2022. (*See* DE 68.)

## Etienne's Dishonest and Vexatious Litigation Tactics

Significantly, Dr. Rodriguez opines that Etienne has deliberately embellished his mental health problems. In particular, she opines that the results of Etienne's Booklet Category Test ("BCT") are unreliable due to his deliberate exaggeration or fabrication of neurocognitive impairment:

> In order to detect the presence of neuropsychological impairment such as that found in brain injuries or disease, the defendant was administered the BCT. This test is particularly sensitive to an individual's abilities in abstract reasoning, flexibility, and novel problem solving skills. Mr. Etienne's performance on this measure fell in the Severely Impaired range. **However, Mr. Etienne elevated all of the indices that are suggestive of the exaggeration or fabrication of neurocognitive impairment on this measure**. These indices are composed of items that samples with genuine neurocognitive impairment are able to accurately complete. **The defendant's performance on this measure suggests that he attempted to portray false neurocognitive impairment.** Therefore, the current results should not be viewed as valid indicators of his current level of cognitive functioning.
>
> Attempts to administer additional objective measures were unsuccessful, as the defendant refused to complete any further testing.

(*See* Forensic Evaluation at p. 10 (Psychological Test Results) (emphasis added).)

Likewise, Dr. Rodriguez opines that Etienne's *pro se* filings are part of a deliberate strategy to thwart the proceedings in this case:

> A thorough review of documents submitted to the court by Mr. Etienne, failed to indicate signs of mental illness. While Mr. Etienne's letters appear mostly nonsensical, the content and style of the letters are consistent with defense strategies employed by sovereign citizens. For example, Mr. Etienne asserts that he is a "living breathing man" and is not the defendant, as well as, many other unorthodox claims. According to information reviewed, the tenets of this defense strategy are based on the following: that an individual can copyright and/or claim his own name and/or person as property, that all crime is commercial crime, and that the courts do not have legitimate jurisdiction. Reportedly, many defendants have filed multi-million dollar lawsuits against judges and prosecutors for uttering the defendant's name during trials. These claims arise from the assertion that- by filing with the Uniform Commercial Code (UCC); one establishes ownership over oneself and is thus a "sovereign being." Similar to Mr. Etienne's filings, many of the

> documents filed by sovereign citizens seek relief from criminal charges, lay claims to vast sums of money, or demand vast sums of money. Many are designed to harass or intimidate public officials, and are often created in retaliation against government authorities. The documents are typically large in size, containing pseudo-legal, nonsensical language. **While Mr. Etienne's defense tactics may not ultimately be successful, they are not believed to be based on confused or delusional thinking, or any symptoms of an active phase of mental illness. Instead, these ideas appear to be increasing in popularity among criminal defendants and are a volitional attempt to thwart the current legal proceedings.**

(*See* Forensic Evaluation at p. 12 (emphasis added); *see also* Etienne's *pro se* filings at DE 37, 40, 41, 42, 43, 45, 46, 47, 48, 52, 54, 55, and 59.)[1]

Aside from Etienne's espousal of sovereign citizen ideology, Dr. Rodriguez finds that his mental functions – including his memory – are normal and unremarkable:

> During moments in which Mr. Etienne discussed sovereign ideology and related perceived injustice by government officials, Mr. Etienne's speech became loud and pressured, requiring frequent redirection. He utilized quasi-legal language related to sovereign code. **Otherwise, his speech patterns and receptive language skills during his communications were within normal limits. His attention and concentration skills were adequate. Despite his memory complaints, his recall for immediate, recent, and remote information appeared grossly intact. His thought process was logical and goal-oriented**. His thought content included conspiracy theories consistent with sovereign ideology, but was otherwise unremarkable. There was no evidence of delusional content during clinical interviews. There was no evidence of perceptual disturbances noted during clinical contacts and Mr. Etienne denied experiencing any auditory/visual hallucinations.
>
> …  A review of the defendant's telephone calls revealed he was oriented to his environment, dates, times, and his activities. **He displayed organized thought processes, and intact memory abilities for recent and remote events**. His speech pattern was normal in volume, rate, and prosody. No delusional or bizarre content was noted. The defendant discussed his well-being, pending psychological evaluation, upcoming court date, and other appropriate topics.  … Monitored telephone calls and electronic correspondence did not reveal any evidence of mental illness.

(*Id.* at p. 9 (emphasis added).)

---

[1] Dr. Rodriguez's opinion is supported by the circumstances and timing of Etienne's *pro se* filings. Etienne filed his pleadings while in pretrial detention and taking regular medication. (*See* Motion (DE 66) at p. 4.) Moreover, nine of Etienne's pleadings were filed in March, April, and May 2022, around and after the time that Dr. Rodriguez completed her evaluation and determined that Etienne is competent to stand trial. (*See* DE 43, 45, 46, 47, 48, 52, 54, 55, and 59.)

3

**Etienne Can Plead Guilty, Even if He Doesn't Remember What He Did**

Dr. Rodriguez's opinion that Etienne is competent to plead guilty necessarily implies that he is able to do so. Competence means that Etienne has the mental capacity to complete a plea colloquy, and that he can knowingly stipulate to the facts and elements the government would prove if this case went to trial. Significantly, Dr. Rodriguez observed that Etienne understands the charges in the Indictment, and he has formulated a defense strategy: he will argue that somebody else used his phone. (*See* Forensic Evaluation at pp. 11-12.) Regardless, even assuming that Etienne has no memory of his offense conduct, he may plead guilty if he understands the nature of the charges and the evidence the government would present at trial. As discussed below, the charges, the facts, and the evidence are easily understood.

The two-count Indictment charges that on March 9, 2021, in Saint Lucie County, in the Southern District of Florida, and elsewhere, Carmelo Etienne did threaten to assault and murder a United States Judge and the Judge's Court Room Deputy ("CRD"), with the intent to retaliate against the Judge and the CRD, on account of their performance of official duties, in violation of Title 18, United States Code, Section 115(a)(1)(B). (*See* Indictment (DE 7); Complaint (DE 3).)

The Criminal Complaint filed by the United States provides a detailed account of Etienne's offense conduct and discusses some of the evidence of his guilt. (*See* Complaint (DE 3) at pp. 2-8.) The evidence discussed in the Complaint proves that Etienne threatened to assault and murder Magistrate Judge Shaniek Maynard and Her Honor's CRD, Colette Griffin-Arnold, in retaliation for a report and recommendation that Judge Maynard issued in the case, *Etienne et al. v. Loveland, et al.*, Case No. 18-14061-Civ-Martinez/Maynard.

Paragraphs 4 to 7 of the Complaint, discuss Etienne's litigation with the Florida Department of Children ("DCF") regarding Etienne's custody of three children; which culminated in Judge Maynard's report and recommendation in *Etienne, et al. v. Loveland, et al.*:

4

> 4. Records obtained from the United States District Court for the Southern District of Florida PACER website disclose that in February 2018, the State of Florida, Department of Children of Families ("DFC") filed a petition in the Juvenile Division of the 19th Judicial Circuit Court in and for Indian River County, for the removal of three children residing with ETIENNE and his then-companion, Sophia Thelisma ("Thelisma"), at their residence in Vero Beach, Florida. Thelisma is the mother of all three children, and ETIENNE is the father of one of them. The case is titled *In the Interest of: [REDACTED], Minor Children*, Indian River Circuit Court, Case No. 2018-DP-000028. The records show that on February 11, 2018, Indian River Circuit Court Judge Paul B. Kanarek entered an Order for Placement in Emergency Shelter, of all three children; and the following day, February 12, 2018, Circuit Judge Victoria Griffin entered an Order Appointing Guardian *Ad Litem*, for the children.[2]
>
> 5. On February 16, 2018, ETIENNE and Thelisma filed a *pro se* Complaint for Violation of Civil Rights, in this Court, wherein they purported to allege civil rights claims pursuant to Title 42, United States Code, Section 1983, against various employees of DCF, including Thomas Loveland. The case, *Etienne, et al. v. Loveland, et al.*, Case No. 18-14061-Civ-Martinez/Maynard, was initially assigned to United States District Judge Robin L. Rosenberg; however, it was later reassigned to District Judge Jose E. Martinez, with Judge Maynard as the paired Magistrate Judge.
>
> 6. The docket report for Case No. 18-14061 discloses that during the period from February 16, through April 26, 2018, ETIENNE and Thelisma filed eight amended complaints and "amended cross suit complaints," against various state agents, as well as a motion to "vacate and void Judge Kanarek's Judgment." Further, certain defendants filed a motion to dismiss ETIENNE and Thelisma's complaint for failure to state a cause of action.
>
> 7. On May 7, 2018, pursuant to a referral from District Judge Martinez, Judge Maynard issued her "Report and Recommendation on Plaintiffs' Amended Complaint (DE 44) and on Pending Motions," wherein she recommended that ETIENNE and Thelisma's final amended complaint be dismissed with prejudice, and without leave to amend. (*See* DE 53 in Case No. 18-14061, at 12.) On June 15, 2018, District Judge Martinez entered an order adopting Judge Maynard's report and recommendation. (*See* DE 77 in Case No. 18-14061.)

(Complaint (DE 3) at pp. 2-3, ¶¶ 4-7.)

---

[2] In 2019, ETIENNE and Thelisma removed Indian River Circuit Court Case No. 2018-DP-000028 to the United States District Court for the Southern District of Florida; and they filed various documents from the state court case with the Court, including the Order for Placement in Emergency Shelter, and the Order Appointing Guardian *Ad Litem*. (*See* DE 1-1 in *Department of Children and Families v. Thelisma and Etienne*, Case No. 19-14398-Civ-Rosenberg/Maynard.) The Court remanded the case to the state court.

Paragraph 9 of the Complaint provides the following account of Etienne's threats against Judge Maynard and CRD Griffin-Arnold on March 9, 2021:

> 9. … [A]t approximately 3:54 p.m., Suzanne Carlson, ("Carlson"), Alternate Court Clerk, at the Alto Lee Adams, Sr., U.S. Courthouse, Fort Pierce, Florida received a phone call from (443) 750-9181. Carlson answered the phone and said something to the effect of, "Good afternoon, Clerk's Office." A male caller self-identified himself at the beginning of the phone call as Carmelo ETIENNE. ETIENNE asked to speak with Griffin-Arnold. Carlson told ETIENNE that Griffin-Arnold was not in. Carlson asked for the caller's name again and he again identified himself as Carmelo ETIENNE. ETIENNE asked if Griffin-Arnold was still a court clerk and if Judge Maynard was still a judge. Carlson responded that they were. ETIENNE then stated that he was going to hang Griffin-Arnold and Judge Maynard. Regarding Judge Maynard, ETIENNE declared "that judge that Colette works with, Judge Maynard, she is going to get hanged." ETIENNE then spoke about somebody who "took the children," or "his children," and stated:
>
>   a. "You fucked up;"
>
>   b. "This is judgment day;"
>
>   c. "I am hanging everybody in the courthouse;"
>
>   d. "I am hanging the president and congress;"
>
>   e. "I am the owner of all;"
>
>   f. "I am going to show you what bloodshed looks like;"
>
>   g. "I will know if you lied about Colette today, I have cameras on the courthouse;" and
>
>   h. "Thank you for remaining calm."
>
> ETIENNE then said, "call me back in an hour," and hung up.

(Complaint (DE 3) at pp. 3-4, ¶ 9.)

Courthouse phone records show that on March 9, 2021, at 3:54 p.m., a 5 minute 33 second phone call was placed from (443) 750-9181 to the Clerk's Office number (772) 467-2305. (*See* Complaint (DE 3) at p. 4, ¶ 10.) There is ample evidence that (443) 750-9181 is Etienne's cell phone number. (*See, e.g., id.* at pp. 4-6, ¶¶ 11-14.)

6

## **MEMORANDUM OF LAW**

Rule 11(b), Federal Rules of Criminal Procedure, requires the same colloquy before the Court may accept a plea of guilty or *nolo contendere*; therefore, allowing Etienne to plead *nolo contendere* will not obviate the need for a plea colloquy. Rule 11(b) provides:

**(b) Considering and Accepting a Guilty or Nolo Contendere Plea.**

**(1) Advising and Questioning the Defendant.** Before the court accepts a plea of guilty or nolo contendere, the defendant may be placed under oath, and the court must address the defendant personally in open court. During this address, the court must inform the defendant of, and determine that the defendant understands, the following:

**(A)** the government's right, in a prosecution for perjury or false statement, to use against the defendant any statement that the defendant gives under oath;

**(B)** the right to plead not guilty, or having already so pleaded, to persist in that plea;

**(C)** the right to a jury trial;

**(D)** the right to be represented by counsel – and if necessary have the court appoint counsel--at trial and at every other stage of the proceeding;

**(E)** the right at trial to confront and cross-examine adverse witnesses, to be protected from compelled self-incrimination, to testify and present evidence, and to compel the attendance of witnesses;

**(F)** the defendant's waiver of these trial rights if the court accepts a plea of guilty or nolo contendere;

**(G)** the nature of each charge to which the defendant is pleading;

**(H)** any maximum possible penalty, including imprisonment, fine, and term of supervised release;

**(I)** any mandatory minimum penalty;

**(J)** any applicable forfeiture;

**(K)** the court's authority to order restitution;

**(L)** the court's obligation to impose a special assessment;

**(M)** in determining a sentence, the court's obligation to calculate the applicable sentencing-guideline range and to consider that range, possible departures under the Sentencing Guidelines, and other sentencing factors under 18 U.S.C. § 3553(a);

**(N)** the terms of any plea-agreement provision waiving the right to appeal or to collaterally attack the sentence; and

**(O)** that, if convicted, a defendant who is not a United States citizen may be removed from the United States, denied citizenship, and denied admission to the United States in the future.

**(2) Ensuring That a Plea Is Voluntary.** Before accepting a plea of guilty or nolo contendere, the court must address the defendant personally in open court and determine that the plea is voluntary and did not result from force, threats, or promises (other than promises in a plea agreement).

FED. R. CRIM. P. 11(b)(1), (2) (emphasis in original).

Rule 11(b) does treat pleas of guilty and *nolo contendere* differently in one respect. Rule 11(b)(3) provides: "Before entering judgment on a guilty plea, the court must determine that there is a factual basis for the plea." FED. R. CRIM. P. 11(b)(3). The rule does not impose the same requirement for a plea of *nolo contendere*; however, defense counsel may stipulate that there is a factual basis for a plea of *nolo contendere*. *See United States v. Prince*, 533 F.2d 205, 208 (5th Cir. 1976) ("Contrary to appellants' assertion, Rule 11 does not require that the district court find a factual basis for a plea of nolo contendere, as opposed to a plea of guilty. … In any event, the stipulation by defense counsel at the nolo hearing concerning the earlier trial adequately establishes that a factual basis for the appellants' nolo pleas existed.") (footnote and internal citations omitted). Nonetheless, the United States submits that Etienne is able to stipulate to the facts the government would prove at trial; therefore, the Court should not consent to a plea of *nolo contendere* to obviate the need for a stipulation.

Allowing Etienne to plead *nolo contendere* would reward him for his dishonest and vexatious tactics in this litigation. A plea of *nolo contendere* would benefit Etienne because he would not admit guilt; he would merely consent to be punished as if he were guilty. *See North Carolina v. Alford*, 400

8

U.S. 25, 35 n. 8, 91 S. Ct. 160, 166 n. 8, 27 L. Ed. 2d 162 (1970); *see also United States v. Green*, 873 F.3d 846, 861 (11th Cir. 2017) (for the purposes of subsequent proceedings, a plea of *nolo contendere* admits nothing and is the same as a plea of not guilty) (citing *United States v. Williams*, 642 F.2d 136, 139 (5th Cir. Unit B 1981)). Moreover, the United States could not use Etienne's *nolo* conviction in this case as Rule 404(b) evidence, should Etienne threaten a United States judge or official in the future. *See Green*, 873 F.3d at 866 ("[W]e conclude that for purposes of Rule 404(b), Rule 803(22) precludes use of the 2006 *nolo* conviction here to prove that Defendant actually possessed ammunition in 2006."). Rather than reward Etienne for obstructing the prosecution of this case, the Court should insist that he accept responsibility and plead guilty.

WHEREFORE the United States of America respectfully requests that the Court deny the defendant Carmelo Etienne's Motion for Consent to Enter a *Nolo Contendere* Plea (DE 66).

Respectfully submitted,

JUAN ANTONIO GONZALEZ
ACTING UNITED STATES ATTORNEY

By: /s/ Dwayne E. Williams
DWAYNE E. WILLIAMS
Assistant United States Attorney
Florida Bar No. 0125199
99 N.E. 4th Street, 5th Floor
Miami, Florida 33132
Tel: (305) 961-9163
Fax: (305) 536-6923
dwayne.williams@usdoj.gov

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on August 15, 2022, I electronically filed the foregoing United States' Response in Opposition to Carmelo Etienne's Motion for Consent to Enter a *Nolo Contendere* Plea (DE 66), with the Clerk of the Court using CM/ECF.

/s/ Dwayne E. Williams
Dwayne E. Williams
Assistant United States Attorney
